UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS D. MURPHY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES FOREST SERVICE;<br>THOMAS TIDWELL, Chief, United States<br>Forest Service; and NANCY J. GIBSON,<br>Forest Supervisor, United States Forest<br>Service,<br><br>　　　　Defendants. | No. 2:13-cv-02315-TLN-AC<br><br>**ORDER DENYING DEFENDANTS'<br>MOTION TO DISMISS AS MOOT AND<br>DENYING PLAINTIFF'S MOTION FOR<br>LEAVE TO FILE SUPPLEMENTAL<br>COMPLAINT** |

　　　　Pending are motions in which Plaintiff Dennis Murphy and Defendants United States Forest Service; Tom Tidwell, who is sued in his official capacity as Chief of the Forest Service; and Nancy Gibson, who is sued in her official capacity as Forest Supervisor (collectively, "the Forest Service") take opposite positions on whether "live issues [remain in this action that] supply the constitutional requirement of a case or controversy." Powell v. McCormack, 395 U.S. 486, 497 (1969) (citations omitted). Plaintiff alleges in his Second Amended Complaint (SAC) that the Forest Service's Upper Echo Lakes Hazardous Fuels Reduction Project (the "Project") violates provisions of the National Environmental Protection Act (NEPA) and the Administrative Procedure Act (APA). The Forest Service argues this action should be dismissed as moot under Federal Rule of Civil Procedure ("Rule") 12(b)(1) since "the [P]roject has been withdrawn and the Forest Service has unequivocally stated that no further activity may take place on the [P]roject." (P. & A. ISO Mot. to Dismiss as Moot ("Mot.") 1:19–20, ECF No. 61-1.) Plaintiff opposes, arguing the motion should be denied since his "claims present a live, ongoing

1

controversy as to which the Court may grant effective relief." (Pl.'s Opp'n to Mot. ("Opp'n") 1:16–18, ECF No. 62 (footnote omitted).)

## I. BACKGROUND

The Forest Service alleges: "In November 2012, the Forest Service approved the . . . Project to reduce fire risk to the Eldorado National Forest and area cabin owners, such as Plaintiff." (Mot. 1:23–25.) It further alleges: "The [P]roject was set to proceed in several phases." (Mot. 2:7.) The parties agree that "[t]he first phase [('Phase One')]—on the Northeast side of Echo Lake . . .—was completed in November 2013." (Mot. 2:7–9; Opp'n 2:9–10.) The Forest Service states in its brief that thereafter, the Project was withdrawn on July 20, 2015, "[d]ue to winter weather, budget constraints, and other priorities," and consequently "the second phase of the [P]roject [('Phase Two')] . . . never began." (Mot. 2:10–12.)[1]

## II. LEGAL STANDARD

The Constitution limits federal-court jurisdiction to the consideration of "cases" and "controversies." U.S. Const. Art. III, § 2, cl. 1. "[F]ederal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." N.C. v. Rice, 404 U.S. 244, 246 (1971) (citation omitted). The focus of a mootness inquiry "is whether there can be any effective relief." Cantrell v. City of Long Beach, 241 F.3d 674, 678 (9th Cir. 2001) (citation omitted). A case is not moot if "changes can still be made to help alleviate any adverse effects" of the injury suffered by plaintiff. Tyler v. Cuomo, 236 F.3d 1124, 1137 (9th Cir. 2000). However, "[a] case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000) (quoting United States v. Concentrated Phosphate Exp. Ass'n, 393 U.S. 199, 203 (1968)). Further, "defendants in NEPA cases face a particularly heavy burden in establishing mootness." Cantrell, 241 F.3d at 678; see also Friends of the Earth, Inc., 528 U.S. at 170 ("The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to recur lies with the party asserting

---

[1] Plaintiff does not counter in his opposing brief the Forest Service's averments and brief statement concerning why it withdrew the Project.

mootness.").

**III. DISCUSSION**

A.  <u>Mootness</u>

The Forest Service seeks dismissal of this action on mootness grounds, arguing "Courts have often held that cases are moot when an agency withdraws its decision to proceed with a project." (Mot. 4:2–3.) It further argues:

> Because the notice of withdrawal states that "No further activity will occur on this [P]roject," there is nothing for the Court to do and no relief for the Court to order. Simply put, nothing can occur on the ground based upon prior approvals. . . . The withdrawal means the Forest Service is without legal authority to take action on this [P]roject, and any new [P]roject would have to be authorized by new authority, which would be subject to judicial review in the ordinary course.

(Mot. 4:15–23 (internal citations omitted).)

In response, Plaintiff argues that although the Forest Service has withdrawn its decision to proceed with the Project, "[P]hase [O]ne of the Project has already been completed" which "increase[d] the fire risk" and "resulted in slash piles[, i.e., piles of tree and vegetation cuttings,] throughout the Project area." (Opp'n 9:7–12.) Plaintiff relies on a number of cases wherein completion of a federally-authorized project did not render the action moot. For example, in <u>Cantrell</u>, defendants argued the case was moot since the historic buildings and habitat had already been destroyed. <u>Cantrell</u>, 241 F.3d at 678. The court found that "if required to undertake additional environmental review, the defendants could consider alternatives to the current reuse plan, and develop ways to mitigate the damage to the birds' habitat by, for example, creating new nesting and foraging areas on the land that was formerly the station or utilizing other nearby land for mitigation purposes." <u>Id.</u> at 678–79.

Plaintiff argues that effective relief can still be granted:

> If the [Forest] Service is ordered to comply with NEPA, [it] would understand fully the environmental implications of its decisions, including any decision to proceed with, alter, or withdraw the Project prior to completion. After preparing an [Environmental Assessment] EA or [Environmental Impact Statement] EIS, the [Forest] Service could determine that mitigation is required to offset the damage that has resulted from the cutting of green, living brush and trees to create flammable, dry slash piles, it could determine

> that those slash piles should be removed, or it could reach some other conclusion (for example, that actions should be taken to protect yellow-legged frog habitat or wetlands, or that monitoring should be initiated to assess the potential for ongoing effects of the Project on those resources).

(Opp'n 8:17–25 (footnote omitted).)

Although the Forest Service alleges it has withdrawn the entire Project, the parties' agree that the Forest Service has completed Phase One and withdrawn Phase Two. The Ninth Circuit has held that an agency's completion of a project does not moot a challenge to the project. For example, the plaintiffs in Columbia Basin Land Protection Association v. Schlesinger, 643 F.2d 585, 590 (9th Cir. 1981), sought "to enjoin the construction of a 500 kilovolt power transmission line across their lands" and challenged the sufficiency of an EIS prepared to review the line's environmental effects. By the time of the appeal, "[a]ll 191 towers required for the line ha[d] been erected and the line" was operational. Id. The Ninth Circuit concluded the case was not moot, reasoning: "The building of the towers has not made the case hypothetical or abstract [since] the towers still cross the fields of the Landowners, continually obstructing their irrigation systems and this Court has the power to decide if they may stay or if they may have to be removed." Id. at 591 n.1; accord Neighbors of Cuddy Mountain v. Alexander, 303 F.3d 1059, 1065–66 (9th Cir. 2002) (holding challenge to timber sale not moot although logging was complete since the court could mitigate the impact).

Further, if withdrawal of a partially completed project rendered a case moot, an agency "could merely ignore the requirements of NEPA, [withdraw a project divided into two phases] after completing the first phase] before a case gets to court, and then hide behind the mootness doctrine." Columbia Basin, 643 F.2d at 591 n.1. As the Ninth Circuit stated in Columbia Basin, "[s]uch a result is not acceptable." Id.; see also West v. Sec'y of Dep't of Transp., 206 F.3d 920, 925–26 (9th Cir. 2000) ("The fact that [the first stage] of the interchange [project] has been constructed and is operational is insufficient to render the case moot." (footnote omitted)).

Moreover, effective relief is still available to remedy ongoing harm to Plaintiff's interests and includes remanding for additional environmental review. " Remand [to the agency to act in compliance with its statutory obligations] is usually the appropriate remedy in [cases alleging

4

1  agency action was 'arbitrary and capricious' in violation of APA] § 706(2) . . . ." Pinnacle
2  Armor, Inc. v. United States, No. 1:07-CV-01655 LJO, 2012 WL 2994111, at *10 n.3 (E.D. Cal.
3  July 20, 2012) (citing Defenders of Wildlife v. U.S. Envt'l Prot. Agency, 420 F.3d 946, 978 (9th
4  Cir. 2005), rev'd on other grounds, Nat'l Ass'n of Home Builders v. Defenders of Wildlife, 551
5  U.S. 644 (2007)).  If the Forest Service is required to undertake additional environmental review,
6  it could consider ways to mitigate damage incurred on the Northeast side of Echo Lake during
7  Phase One.  See Cantrell, 241 F.3d at 678–79; Slockish v. U.S. Fed. Highway Admin., 682 F.
8  Supp. 2d 1178, 1198 (D. Or. 2010) ("The court does have the power to order defendants to carry
9  out additional review of the alleged cultural and historical resources in the project area in
10 compliance with[,] . . . [*inter alia*], NEPA . . . .").

   B.  Leave to File Supplemental Complaint

12 On September 15, 2016, Plaintiff filed a motion under Rule 15(d) for leave to supplement
13 his Complaint.  (Notice of Mot. & Mot. for Leave to File Supplemental Compl., ECF No. 60.)
14 Specifically, Plaintiff seeks to incorporate facts concerning the Forest Service's "partial
15 implementation of the Project" into its current claims under NEPA and the APA, and to add a
16 claim alleging "the Forest Service's . . . decision to withdraw its 2012 decision authorizing the
17 Project violates NEPA because the agency implemented an action that was not subject to any
18 environmental review."  (Mem. P. & A. ISO Pl.'s Mot. for Leave to File Supplemental Compl.
19 ("Leave Mot.") 1:1–12, ECF No. 60-1.)  The Forest Service opposes the motion, arguing, *inter*
20 *alia*, "Plaintiff's motion should be denied because it addresses the liberal Rule 15 standard rather
21 than the stricter Rule 16 standard."  (Opp'n to Leave Mot. 3:3–4, ECF No. 63.)  This Court
22 agrees.

23 Because Plaintiff does not address in his opening brief the "good cause" standard that
24 governs a request to amend provisions of the Status (Pretrial Scheduling) Order ("Order") filed on
25 April 28, 2014, this motion is denied.  (ECF No. 58.)[2]  Furthermore, Plaintiff fails to address

---

[2]  "The Ninth Circuit has not addressed specifically whether a party seeking to file a supplemental complaint under Rule 15(d)—as [Plaintiff] asserts here—must meet Rule 16(b)'s good cause standard to modify the scheduling order where the motion to supplement is filed after the deadline for amending the complaint, and the district courts that have addressed the question are split."  TaiMed Biologics, Inc. v. Numoda Corp., No. C 10-03260 LB, 2011 WL 1630041, at *2 n.2 (N.D. Cal. Apr. 29, 2011) (citing Global Bldg. Sys. v. Brandes, No. CV–07–1065–PHX–DGC,

5

whether any supplement to his Complaint can be effected without amending the Order. Plaintiff addresses Rule 16's "good cause" standard for the first time in his reply brief. However, "[t]he district court need not consider arguments raised for the first time in a reply brief." Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007). Therefore, this argument is disregarded.

To prevail, Plaintiff must first satisfy Rule 16's "good cause" standard before seeking to amend and/or supplement the Complaint under Rule 15. See Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607–08 (9th Cir. 1992) ("Once the district court . . . file[s] a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16 which establishe[s] a timetable for amending pleadings that rule's ['good cause'] standard[] control[s]."). Since Plaintiff has failed to demonstrate that good cause justifies amending the Order, Plaintiff's motion filed on September 15, 2016 is denied.

**IV. CONCLUSION**

For the stated reasons, the Forest Service's motion to dismiss is DENIED, and Plaintiff's motion for leave to supplement his Complaint is DENIED.

IT IS SO ORDERED.

Dated: January 29, 2016

Troy L. Nunley
United States District Judge

2008 WL 477876, at *2 (D. Ariz. Feb. 19, 2008) (collecting cases)).